AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

**NORTHERN**    DISTRICT OF    **CALIFORNIA**

UNITED STATES OF AMERICA

v.

Julio Cesar Vega, Octavio Patino Morales, Celso Betancourt Medrano, and Irma Vega

FILED

JAN 23 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**CRIMINAL COMPLAINT**

CASE NUMBER: 3 07 70026

JL

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about __January 11, 2007__ in __Sonoma__ county, in the __Northern__ District of __California__ defendant(s) did, (Track Statutory Language of Offense)

See Attachment A, attached hereto and incorporated by reference; see also Affidavit of McCarrell A. Crumrine, attached hereto and incorporated by reference

in violation of Title __21__ United States Code, Section(s) __846__

I further state that I am a(n) __Special Agent, FBI__ and that this complaint is based on the following facts:
_Official Title_

See Affidavit of McCarrell A. Crumrine, attached hereto and incorporated by reference

Continued on the attached sheet and made a part hereof:    ☐ Yes    ☐ No

Approved As To Form: _[signature]_ AUSA: Timothy J. Lucey   01/22/2007

Sworn to before me and subscribed in my presence,

Name/Signature of Complainant:    Special Agent McCarrell A. Crumrine

1-23-07        at        San Francisco, California
Date                                                           City and State

Honorable James Larson
United States Magistrate Judge
Name & Title of Judicial Officer                                 Signature JAMES LARSON
                                                             U.S. CHIEF MAGISTRATE JUDGE

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT OF MCCARRELL A. CRUMRINE

I, McCarrell A. Crumrine, Special Agent of the Federal Bureau of Investigation, United States Department of Justice, being duly sworn, do declare and state:

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) and have been so employed since October 2000. I am presently assigned to the Santa Rosa Resident Agency of the San Francisco Office of the FBI. I have participated in investigations of cases involving violent gangs, narcotics trafficking, bank robbery, and public corruption. I have received training at the FBI Academy in Quantico, Virginia, to include training on violent gangs, case management, informant development, and Title III investigations. I have obtained the information set forth below either through my own investigation or from other FBI Agents, Drug Enforcement Agency Agents, or local law enforcement officers.

2. This Affidavit is made in support of a Criminal Complaint charging **JULIO CESAR VEGA, OCTAVIO PATINO MORALES, CELSO BETANCOURT MEDRANO**, and **IRMA VEGA** of violation of Title 21, United States Code, Section 846.

3. In connection with my official duties I am a participant in a joint investigation with federal, state, and local law enforcement agencies. The subjects of the investigation are members of a narcotics production and distribution network operating primarily in Mendocino and Sonoma Counties of Northern California. I have reviewed the investigative files gathered in this case and have discussed the case with veteran agents and investigators who have in-depth knowledge of narcotics production and distribution in Northern California.

4. On January 11, 2007, at approximately 2:42 a.m., Santa Rosa Police Department (SRPD), Santa Rosa, California, conducted a vehicle stop in Santa Rosa. The SRPD Officer observed this vehicle fail to stop for a stop sign. Additionally, the vehicle's emergency lights were flashing and the horn to vehicle was sounding. The SRPD Officer requested an additional unit to respond and contacted the driver of the vehicle, **JULIO VEGA**. **OCTAVIO MORALES** was seated in the front right passenger seat and **CELSO MEDRANO** was seated in the back right passenger seat.

5. The SRPD Officer, during his initial contact with **JULIO VEGA**, observed an open 12ounce can of Bud Light Beer in **CELSO MEDRANO**'s lap and a glass bulbous pipe lying in plain view on the back right passenger floorboard. Upon arrival of another SRPD Officer, the primary Officer asked **JULIO VEGA** to exit the vehicle. **JULIO VEGA** exited the vehicle and immediately started to reach for the front pockets on his jacket. The SRPD Officer grabbed **JULIO VEGA**'s hands. Due to the circumstances the SRPD Officer performed a pat search of **JULIO VEGA** for weapons. In **JULIO VEGA**'s front right, pants, coin pocket, the SRPD Officer located approximately 2.8 grams of suspected methamphetamine in a small, plastic baggie. The SRPD Officer arrested **JULIO VEGA** and placed him in an SRPD vehicle.

6. After placing **JULIO VEGA** in the SRPD vehicle, the primary SRPD Officer contacted

**OCTAVIO MORALES** and had him exit the vehicle. As the primary SRPD Officer was searching **OCTAVIO MORALES**, he heard his SRPD partner shout that there was a gun inside the vehicle. **OCTAVIO MORALES** and **CELSO MEDRANO** were handcuffed and placed in SRPD vehicles.

7. The initial SRPD Officer recovered one HK USP 9mm pistol from the back right passenger floorboard of the vehicle next to where **CELSO MEDRANO** was seated. There were seven 9mm rounds loaded into the magazine of the pistol. There were no rounds in the chamber of the gun. Incident to the arrests and impounding of the vehicle, SRPD searched the vehicle. In the back left floorboard SRPD recovered a plastic zip lock bag containing approximately 15.1 grams of suspected methamphetamine. This bag was approximately two (2) feet from where from where **CELSO MEDRANO** was seated in the vehicle. In the lower driver's door console area, SRPD recovered a glass bulbous pipe and a bag containing approximately 74.2 grams of suspected methamphetamine.[1]

8. Following the arrests, **JULIO VEGA**, **OCTAVIO MORALES**, and **CELSO MEDRANO** were interviewed by a SRPD Detective at the SRPD main office. The SRPD Detective advised **JULIO VEGA** of his Miranda Rights. **JULIO VEGA** agreed to talk with the SRPD Detective. **JULIO VEGA** informed the SRPD Detective that he had a small amount of methamphetamine on his person during the vehicle stop. **JULIO VEGA** told the SRPD Detective that the other drugs recovered from the vehicle must have been left by some friends who he had given a ride to earlier in the evening. **JULIO VEGA** told the SRPD Detective that he lived at 1202 Trombetta Street, Santa Rosa, California. **JULIO VEGA** went on to explain that he had been at his residence with his two friends, **CELSO MEDRANO** and **OCTAVIO MORALES**, prior to being stopped by SRPD. **JULIO VEGA** told the SRPD Detective that there was nothing illegal in his house. **JULIO VEGA** did not know if the handgun and methamphetamine recovered from the backseat of his vehicle belonged to **CELSO MEDRANO** or if someone left the items in his car. **JULIO VEGA** also claimed to buy older cars, fix the vehicles, and then resell them. **JULIO VEGA** told the SRPD Detective, upon being questioned about the $1,128.00 in his possession, that he sold an older Volkswagen Jetta to a lady during the night and that he received $1,500.00 for the vehicle. **JULIO VEGA** did not have any paperwork to confirm the transaction, any vehicle information, and he that he did not know the lady he sold the car to or how to contact her.

9. The SRPD Detective then interviewed **OCTAVIO MORALES**. The SRPD Detective advised **OCTAVIO MORALES** of his Miranda Rights. **OCTAVIO MORALES** agreed to talk with the SRPD Detective. **OCTAVIO MORALES** explained to the SRPD Detective that he had just gotten off of work and had only been with **JULIO VEGA** a little while. **OCTAVIO MORALES** went on to relay that he was at **JULIO VEGA**'s house for a few minutes and that **JULIO VEGA** was giving him a ride home when they

---

[1] The suspected methamphetamine recovered during the vehicle stop tested positive for methamphetamine during a Valtox test administered by SRPD.

were stopped by SRPD. **OCTAVIO MORALES** told the SRPD Detective that he was not in possession of any drugs or money and that he did not know what had been located in **JULIO VEGA**'s car.

10. The SRPD Detective then interviewed **CELSO MEDRANO**. The SRPD Detective advised **CELSO MEDRANO** of his Miranda Rights. **CELSO MEDRANO** agreed to talk with the SRPD Detective. **CELSO MEDRANO** explained that he stays at three or four different locations in Santa Rosa, California and that he sleeps on a couch at **JULIO VEGA**'s house most of the time. **CELSO MEDRANO** would not answer any questions in regards to the evidence located in the vehicle. **CELSO MEDRANO** did relay that he did not know anything was in the car.

11. After completing the interviews, the SRPD Detective authored a State of California search warrant for 1202 Trombetta Street, Santa Rosa, California. The search warrant was reviewed and signed by Judge Elliot Daum, State of California - Sonoma County Superior Court.

12. Prior to the execution of the State of California search warrant, at approximately 8:05 a.m., an SRPD Officer observed a female, teenage male, and a smaller child exit 1202 Trombetta and drive away from 1202 Trombetta Street. SRPD stopped this vehicle and detained **IRMA VEGA**, **JULIO VEGA**'s wife. At approximately 8:15 a.m., SRPD executed the search warrant at 1202 Trombetta Street. A strong chemical smell was noted in the residence. SRPD Officers opened windows in order to ventilate the residence. While clearing the residence, SRPD Officers found several items, including a cooking pot on the stove. The pot was propped up at an angle and had a liquid substance in the lower side. There were small crystal shards forming in the liquid. In the higher side of the pot was a white crystalline substance. SRPD Officers believed it appeared that the occupants of the residence were in the process of crystallizing methamphetamine. SRPD Officers did not find any people at the residence. It is noted that **IRMA VEGA** was observed leaving the residence approximately 10 minutes prior to the execution of the search warrant.

13. The following is a partial list of, in my opinion, pertinent items recovered as a result of the State of California search warrant executed at 1202 Trombetta Street, Santa Rosa, California:

    -Approximately six (6) of suspected methamphetamine[2]
    -Plastic zip lock bags
    -Digital scales
    -Gun cleaning kit
    -Hand held radio scanners

---

[2] Investigators are in the process of having the suspected methamphetamine tested by the DEA in order to determine level of purity.

      -Glock 9mm pistol with serial number removed
      -Berreta 9 mm pistol
      -AMT .22 caliber "Back Up" hand gun
      -.38 caliber revolver
      -.30-.30 caliber rifle
      -20 gauge shotgun
      -12 gauge shotgun
      -410 gauge shotgun
      -SKS 7.62 rifle with folding stock
      -SKS 7.62 rifle
      -Fourteen (14) 7.62 X 39 rounds
      -One (1) box of 20 gauge shotgun shells
      -One (1) banana clip magazine with ten (10) 7.62 X 39 bullets
      -One (1) box of 12 gauge shotgun shells
      -One (1) box of 38 Special ammunition
      -Thirteen (13) .30-.30 rounds
      -Two (2) banana clip style rifle magazines
      -One (1) box .22 caliber game shot ammo
      -One (1) box .40 caliber ammunition
      -Fifteen (15) round metal 9mm magazine
      -One (1) Target shopping bag containing numerous 9mm rounds
      -One (1) box of .30-.30 ammunition
      -One (1) ankle holster for small handgun

14. On the same date, at approximately 10:00 a.m., **IRMA VEGA** was interviewed by a SRPD Detective. The SRPD Detective advised **IRMA VEGA** of her Miranda Rights. **IRMA VEGA** told the SRPD Detective that she understood her Rights and wanted to talk. The SRPD Detective told **IRMA VEGA** that she was under arrest for the large quantity of methamphetamine found in her residence. **IRMA VEGA** told the SRPD Detective that she was glad she and her husband been caught because the lifestyle they were living was not conductive to raising her family. **IRMA VEGA** went on to explain that she and her husband, **JULIO VEGA**, became involved in the sale of methamphetamine approximately one year ago when they were both out of work. In June **CELSO MEDRANO** moved into their residence to help them with their bills. **CELSO MEDRANO** stayed in the computer room on the couch. **IRMA VEGA** did not know initially that **CELSO MEDRANO** was involved in methamphetamine, but she soon confronted **JULIO VEGA** about her suspicions and his involvement in drug dealing. **JULIO VEGA** admitted his involvement with **CELSO MEDRANO** in selling methamphetamine. **IRMA VEGA** explained that she was not happy with the fact that her husband and **CELSO MEDRANO** were selling methamphetamine out of the house, but she did not know what to do because it was their only source of income. **IRMA VEGA** relayed that **JULIO VEGA** and **CELSO MEDRANO** would sell anywhere from one pound to four pounds of methamphetamine per week. A lot of the sales were large deals to lower dealers who would distribute the methamphetamine to end users. **CELSO MEDRANO** would travel to an unknown location in the Bay Area once a week to

purchase methamphetamine for his supply in Santa Rosa. According to **IRMA VEGA**, **CELSO MEDRANO** last traveled to the Bay Area on January 9, 2007. **IRMA VEGA** saw **CELSO MEDRANO** return on January 10, 2007 with methamphetamine in two large gallon size zip lock bags.

## SUMMARY

15. Based on the foregoing, I hereby assert that probable cause exists to believe that **JULIO CESAR VEGA, OCTAVIO PATINO MORALES, CELSO BETANCOURT MEDRANO,** and **IRMA VEGA** did participate in activities in violation of Title 21, United States Code, Section 846.

_____
MCCARRELL A. CRUMRINE
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 23 DAY OF JANUARY, 2007

_____
UNITED STATES MAGISTRATE JUDGE
HONORABLE JAMES LARSON

## ATTACHMENT A

**STATUTORY LANGUAGE**

**Title 21, United States Code, Section 846:**

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

## ATTACHMENT B

### PENALTIES

**A person convicted of violating Title 21, United States Code, Section 846** shall be imprisoned not less than ten years in prison and not more than life in prison, fined not more than $4,000,000, given a term of supervised release of not less than five (5) years and no more than life, and required to pay a special assessment fee of one hundred ($100) dollars.